UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 3:15-cv-00229-LRH-WGC |
| | ) | |
| v. | ) | |
| | ) | O R D E R |
| $47,640.00 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a civil forfeiture action. Before this Court is the United States of America's proposed Order for Summons and Warrant of Arrest in Rem for Property and Notice. Doc. #2. The proposed Order refers to the Complaint in this action, a six page document which details the incident that led to seizure of Defendant currency. Doc. #1.[1]

On November 17, 2014, a Drug Enforcement Agency ("DEA") Task Force officer stopped Marcel Guilliod ("Guilliod") as he disembarked an American Airlines aircraft which flew from New York City, New York, to Reno, Nevada. *Id.* ¶¶7-8. According to the Complaint, Guilliod voluntarily agreed to speak to the Officer, stating that he was traveling to Reno from New York—on a one-way ticket—to gamble, and that he would return to New York in four days. *Id.* ¶9. Guilliod stated that he was not carrying any weapons or drugs, and consented to a search of the brown leather bag that he was carrying. *Id.* ¶10. The subsequent search of Guilliod's brown leather bag yielded a quantity of U.S. currency, which Guilliod stated was less than nine thousand dollars. *Id.*

---

[1] Refers to the Court's docket number.

The Complaint alleges that Guilliod then consented to an assessment of the U.S. currency and his brown leather bag by a canine trained to detect the odor of illegal drugs. *Id.* ¶11. The canine tested the brown leather bag and the currency found inside it separately, and positively alerted to the odor of illegal drugs on both. *Id.* The DEA Task Force Officer then conducted a full search of the brown leather bag, which yielded discovery of a large quantity of U.S. currency, folded within multiple layers of clothing. *Id.* ¶12. Upon discovery of this currency, Guilliod stated that the bag contained approximately $47,000, much of which had been given to him by friends. *Id.*

The DEA Task Force Officer then seized the U.S. currency located inside the brown leather bag. *Id.* ¶15. The Complaint states that the seized currency is subject to forfeiture under Title II of the Controlled Substances Act, 21 U.S.C. § 801(a)(6) *et seq.* because it is (1) traceable to the exchange of controlled substances, (2) money furnished or intended to be furnished in exchange for a controlled substance, and (3) money used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act. *Id.* ¶¶17-19.

The government must show that probable cause existed to seize an individual's currency in order to institute a forfeiture action. *See United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1169 (9th Cir. 2008) ("We hold that section 1615 [of the Civil Asset Forfeiture Reform Act] continues to require that the government show probable cause to institute a forfeiture action."). Based on the information in the Complaint, the Court is not convinced that the DEA Task Force Officer had probable cause for the search and seizure, or even reasonable suspicion to stop Guilliod in the first place. The only reason stated in the Complaint for stopping Guilliod is that he traveled from New York City, New York, to Reno, Nevada, on a one-way ticket. This alone does not create reasonable suspicion. *See United States v. $30,670 in U.S. Funds*, No. 01-1340, 2002 WL 31093587, at *3 (N.D. Ill. Aug. 5, 2002) ("A purchase of a one-way ticket does not itself indicate the connection to illegal narcotics transactions."); *cf. Florida v. Royer*, 460 U.S. 491, 502 (1983) (passenger traveling under assumed name is enough to raise reasonable suspicion, when combined with factors such as "paying cash for a one-way ticket, the mode of checking the two bags, and Royer's appearance and conduct in

general").

The dearth of information provided in the Complaint indicates that the government had additional information upon which it relied to stop Guilliod, but this information was not disclosed in the Complaint. This district has recently emphasized the importance of candor to the Court at all stages of investigation. *See United States v. Wei Seng Phua*, No. 2:14-cr-0249, 2015 WL 1757489, at *12 (D. Nev. Apr. 17, 2015) (suppressing evidence obtained as a result of an unconstitutional ruse to obtain consent for a search, and material omissions in the warrant application). Here, the obligation of candor to the tribunal extends to disclosing information regarding the government's reasonable suspicion to stop Guilliod prior to asking the Court to sign an Order for Summons and Warrant of Arrest in Rem for Property. Without additional information, it appears from the Complaint that the DEA Task Force could stop any individual traveling to Reno on a one-way ticket on suspicion of drug trafficking. Without more, this does not create reasonable suspicion to seize a traveler on suspicion of drug trafficking.

Accordingly, the Court will grant the government an opportunity to amend its Complaint to provide sufficient information regarding its reasons for stopping Guillard in the first place. The government shall file its amended Complaint within fourteen (14) days of this Order. If the United States does not file an Amended Complaint, the Court will order that the United States serve notice on Guilliod to enable him to become a claimant in this action.

IT IS THEREFORE ORDERED that the United States of America shall file an Amended Complaint for Forfeiture in Rem within fourteen (14) days of this Order. If the United States does not file an Amended Complaint, the Court will order the United States to serve notice on Guilliod to enable him to become a claimant in this action.

IT IS SO ORDERED.

DATED this 11th day of May, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

3